**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0442n.06
Filed: June 25, 2007

No. 04-1324

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

EDMUND PHILLIPS, III,
     *Movant-Appellant,*

v.

UNITED STATES OF AMERICA,
     *Respondent-Appellee.*

On Appeal from the
United States District Court for
the Western District of Michigan

_____

Before:  KENNEDY, BATCHELDER, and CLAY, Circuit Judges

**KENNEDY, Circuit Judge.**  Petitioner Edmund Phillips appeals the denial of his motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, asserting that (1) he was denied effective assistance of counsel because his attorney did not challenge the sentencing court's calculation of his criminal history category, and (2) the district court erred in refusing his request for an evidentiary hearing.  For reasons that follow, we **AFFIRM** this decision.

**BACKGROUND**

On March 19, 2001, petitioner Edmund Phillips ("Phillips") pled guilty to three counts of armed bank robbery, in violation of 18 U.S.C. § 2113(d), and one count of carrying a firearm in connection with violent felony, in violation of 18 U.S.C. § 924(c)(1)(A)(iii).  Phillips was sentenced to 192-months on each of the bank robbery charges, to be served concurrently, and to 120- months on the gun possession charge, to be served consecutively.

Phillips was represented during the sentencing phase by an assistant federal public defender. Counsel did not object to the application of the Sentencing Guidelines, even conceding that "there is a lot of [criminal] history there." When asked by the court whether Phillips objected to any factual matter in the PSR, counsel said he did not. The district court overruled the only legal objection raised, which pertained to the six-level enhancement to one of the robbery counts under U.S.S.G. § 2B3.1(b)(2)(B) according to a provision applying "if a firearm was otherwise used" during the course of the robbery.

At sentencing, there was no other objection to the Presentence Investigation Report ("PSR"). The district court sentenced Phillips using Criminal History Category V, as recommended in the PSR. Six of the ten criminal history points calculated by the PSR are attributable to juvenile convictions.[1] One point was assessed for breaking and entering from a June 28, 1994 charge. The PSR states that "[a]ccording to juvenile court records, Mr. Phillips waived representation by an attorney." The record is silent as to whether he waived counsel in writing or whether his parents consented to the waiver. The PSR provides that the petition was found to be true, the judge made fourteen-year-old Phillips a ward of the court, and Phillips was sentenced to placement at home on probation and at the Kentfields program. The order of disposition notes that defendant's mother was present at the sentencing hearing.

Phillips received a second criminal history point for malicious destruction of property, providing false information to a police officer, and violating curfew, pursuant to a December 18,

---

[1]Defendant in his brief argues that four of the ten are based on prior convictions, apparently not including the two points assessed for commission of armed robbery while on probation for a prior juvenile offense. *See infra*. Regardless of the precise formulation, finding any of these three convictions to be inappropriate for consideration would drop Petitioner at least one point and into to a lower criminal history category.

1994 incident. The PSR again reflects that Phillips waived counsel. Again, the record does not reflect whether the minor was in custody or whether his parents consented to the waiver. The juvenile court found the counts in the petition to be true, and the judge ordered that Phillips continue to be a ward of the court. He was discharged from probation after successful completion of his diversionary program.

Finally, Phillips received two points for armed robbery in an August 9, 1995 juvenile charge, as well as an additional two points for commission of the instant offense while on probation for his related sentence, pursuant to U.S.S.G. § 4A1.1(d). The PSR reflects that Phillips was represented by counsel and entered a guilty plea as to the robbery count pursuant to a plea agreement. (See also J.A. 152) Three other counts against Phillips were dismissed. He was sentenced as a juvenile, committed to the Michigan Department of Social Services as a state ward, put on probation, and placed at the W.J. Maxey Boys Training School. Defendant was later referred to a halfway house in Lansing, Michigan, then to the Wedgwood Advanced Community Living Program, and ultimately discharged from temporary court wardship at the age of 19. These are just a few items from a lengthy list of Phillips's prior experiences with the criminal justice system that begins when he was 13 years old.

On June 29, 2001, Phillips filed a timely notice of appeal from both of his convictions, arguing only that the district court should have increased his base level for the armed robbery by five levels for "brandishing a weapon" rather than six for "otherwise use" of a weapon, an argument this court rejected in its August 5, 2002 opinion affirming the district court. *United States v. Phillips*, 42 Fed. Appx. 743 (6th Cir. 2002).

3

On July 11, 2003, Phillips filed the instant motion to correct or vacate his sentence, pursuant to 28 U.S.C. § 2255, alleging that the aforementioned juvenile convictions were uncounseled and his counsel was ineffective for failing to challenge the use of these prior juvenile convictions as part of his Sentencing Guidelines computation, both at the sentencing hearing and on appeal.[2] He also asserted that no criminal history point should have been added for the March 5, 1996 offense that he committed as a juvenile because he received a diversionary sentence from the juvenile court.

In an order issued August 11, 2003, the district court denied the § 2255 motion as to the issue of the misapplication of the enhancement for "otherwise us[ing] a firearm." The district court ordered the government to respond to petitioner's challenge to the use of the juvenile convictions and petitioner's ineffective assistance of counsel claim as it pertained to the use of uncounseled prior juvenile convictions. In its response, the government argued that the district court should "obtain an affidavit from petitioner Phillips' sentencing attorney to determine what advice was given or relied upon with regard to the criminal history sentencing issue" and "[i]f petitioner Phillips' sentencing attorney correctly determined that the challenged prior convictions were properly 'counted' under the Sentencing Guidelines, then his ineffective assistance claim must fail." The government also reviewed the merits of the claim and requested summary dismissal, noting that "petitioner has failed to allege that he ever challenged the validity of his juvenile convictions" and "[a] bare allegation that the juvenile defendant does not recall the waiver or did not understand the waiver is insufficient." *See United States v. Early*, 77 F.3d 242, 245 (8th Cir. 1996).

---

[2]Defendant also alleged in his § 2255 petition that the court had misapplied the 2000 amendment to the sentencing guideline enhancement for possession or use of a firearm. Phillips does not appeal the district court's rejection of this argument.

The district court entered orders denying the § 2255 motion on the merits, a subsequent motion for reconsideration of the § 2255 motion, and a request for a certificate of appealability. Phillips appealed the denial of the certificate of appealability, and, on November 22, 2005, this court granted a certificate on the following limited issue:

> [W]hether Phillips was denied the effective assistance of counsel because his attorney did not effectively challenge the sentencing court's calculation of his criminal history category, based in part on prior juvenile convictions in cases where he had not been represented by counsel.

The court also appointed counsel to address this issue and denied the certificate of appealability application in all other respects.

## ANALYSIS

Phillips appeals the denial of his § 2255 motion. To seek relief under § 2255, a prisoner "must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) (citation omitted). Phillips asserts two issues on appeal. He argues that the district court erred in failing to find Phillips's counsel to have performed ineffectively due to his counsel's failure to challenge the use of allegedly uncounseled juvenile convictions and diversionary sentences in the calculation of criminal history. Phillips also argues that the district court erred in refusing to hold an evidentiary hearing to further investigate such issues. We review a district court's denial of a § 2255 motion de novo, while examining the findings of fact under a "clearly erroneous" standard. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). "Ineffective assistance of counsel claims are mixed questions of law and fact" and thus warrant de novo review. *Mallett*, 334 F.3d at 497. Finally, we

5

will reverse a district court's decision not to hold an evidentiary hearing only if that court abused its discretion. *Williams v. Bagley*, 380 F.3d 932, 977 (6th Cir. 2004). Because we agree with the district court that the record indicates that counsel did not err in not challenging the use of the juvenile convictions in the criminal history calculation and sufficient evidence exists in the record to support the district court's decision such that an evidentiary hearing was not required to arrive at this conclusion, we affirm.

## I.

On appeal, Phillips devotes the bulk of his brief to his argument that his counsel performed ineffectively by "fail[ing] . . . to make appropriate objections to the PSR's calculation of Phillips' criminal history category." In order to raise a viable ineffective assistance of counsel claim, Phillips must demonstrate that he satisfies the two-prong test articulated in *Strickland v. Washington* by showing that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 687-88, 694 (1984). We agree with the district court's determination that Phillips has failed to prove that his counsel erred within the meaning of the first prong of *Strickland* by not challenging the use of certain juvenile convictions for the criminal history sentencing calculation.

In rejecting Phillips's argument that his counsel should have challenged the use of particular juvenile convictions because they were uncounseled, the district court found that the record did not factually support Phillips's assertions that he *was* deprived of his right to counsel in any of these juvenile proceedings. The court first noted that, as part of the federal PSR process, Phillips himself filled out a form provided to the probation officers indicating that he had counsel or waived counsel

6

for each of the three prior juvenile convictions in question. Second, the court remarked that Michigan law has long provided counsel to juveniles in its proceedings. Third, the judge observed juvenile court records indicating that Phillips waived counsel as to the 1994 breaking and entering proceedings, waived counsel as to the 1994 malicious destruction of property proceedings, and was represented by counsel for the purposes of the 1995 armed robbery conviction. Finally, the judge noted that Phillips assured the court that he had discussed the PSR with his counsel, confirming that he had no objection to the factual matter in the report.

We agree with the district court that Phillips's mere assertion that he did not recall making these waivers of counsel was "insufficient to sustain his burden of proving that the waiver was not knowingly and willingly made." After surveying the wealth of documentary evidence in the record contravening Phillips's assertion, the court declared that "counsel, as well as the court, should be allowed to rely upon a petitioner's own assertions as to his background, especially in the added light of a Pre-sentence Investigation Report and file which shows either counsel or waiver." There is no testimony or sworn affidavit in the record asserting that Phillips did not understand the waivers that he was providing, nor is there any evidence that would indicate that any of the documents included are invalid. Based on our survey of the evidence of the waivers of counsel as to the two 1994 juvenile offenses and the provision of counsel as to the 1995 offense that are in the record, we share in the district court's conclusion that Phillips has failed to show that his counsel was ineffective in not challenging the use of the juvenile convictions. In light of the quantity of paper evidence, including documents that Phillips himself completed or failed to challenge when given the opportunity, it is puzzling to this court that the dissent feels that "there is simply no evidence of a valid waiver of the right to counsel." Dissent at ¶ 19. Even if we were to accept the dissent's

7

assertion that "the record is inconclusive and does not indicate whether the Petitioner waived counsel under the appropriate procedural mechanisms," Dissent at ¶ 22, we still could not agree with the dissent's position that "a determination on the validity of Petitioner's waiver is simply not possible on this record . . . ." Dissent at ¶ 23. All documents before us indicate that Phillips's right to counsel was honored; petitioner has not met his burden of proving otherwise.[3]

Phillips also asserts on appeal that counsel was ineffective in failing to challenge the criminal history calculation's inclusion of juvenile convictions that he asserts were dispensed with in a diversionary manner. (J.A. at 118).[4] According to the law of this circuit, juvenile delinquency adjudications may be included in a defendant's criminal history calculation when computing a sentence. *United States v. Williams*, 176 F.3d 301, 311 (6th Cir. 1999). Phillips correctly notes that § 4A1.2(f) of the Guidelines excepts diversionary sentences given in juvenile court from inclusion in the sentencing calculation.

> A diversionary disposition resulting from a finding or admission of guilt, or a plea of nolo contendere, in a judicial proceeding is counted as a sentence under § 4A1.1(c) even if a conviction is not formally entered, except that diversion from juvenile court is not counted.

---

[3]It is almost as if the dissent is shifting the burden to the government to prove that petitioner fully received his right to counsel. The dissent's apparent suspicion of the records before the court is not only puzzling because of this unconventional allocation of burdens but also because of its apparent skepticism of the veracity of the juvenile court documents' indications of waivers or provision of counsel. Nevertheless, the dissent trusts these same documents for evidence offered to support Phillips's contention that he received diversionary sentences pursuant to certain juvenile proceedings. *See infra*.

[4]Although Phillips's § 2255 motion only flags the March 5, 1996 sentence (which was offered to defendant after he pled guilty to the August 9, 1995 armed robbery offense) as improperly included in light of its diversionary nature, and his appellate brief does not refer to this sentence, but rather to the June 28, 1994 and December 18, 1994 charges, we will construe the motion to include this argument broadly so as to encompass all three charges, as the same rationale for dismissing the challenge applies to each one.

U.S.S.G. § 4A1.2(f). Thus, the relevant question becomes whether Phillips's sentences for the June 28, 1994, December 18, 1994, and August 9, 1995 offenses are diversionary for the purposes of the Sentencing Guidelines. No definition of a diversionary sentence is included in the Sentencing Guidelines provision itself. Though Phillips would have us look to Michigan law to determine what renders a sentence diversionary, we use federal law to elucidate the meaning of this Guidelines term. *United States v. DiPina*, 230 F.3d 477, 483-84 (1st Cir. 2000); *see Williams*, 176 F.3d at 311 (indicating that in interpreting the Sentencing Guidelines to determine what constitutes a "prior sentence" for the purpose of U.S.S.G. § 4A1.2(d)(2), courts must look to federal, not state law). According to *United States v. McKoy*, "[o]nly two cases have considered what constitutes a diversionary juvenile court disposition under § 4A1.2(f)." 452 F.3d 234, 238 (3d Cir. 2006). In *McKoy*, the Third Circuit found that the sentencing court had correctly assessed four criminal history points for past juvenile adjudications that had resulted in the defendant's receipt of varying combinations of probation, fines, community service, and counseling. *Id.* at 236. In doing so, the court first looked to *United States v. Crawford*, wherein the Eighth Circuit rejected the argument that a juvenile sentence of probation and community service should not be counted under § 4A1.2(f). 83 F.3d 964, 966 (8th Cir. 1996). Then, it examined the First Circuit's rejection of an argument that a juvenile court delinquency disposition imposing an eighteen-month term in the custody of the Rhode Island Training School was a diversionary disposition in *United States v. DiPina*, 230 F.3d at 483-84. Ultimately, the *McKoy* court determined that "[b]ecause Mr. McKoy's juvenile dispositions did not involve any form of deferred prosecution, they were not diversionary. They were correctly included in the calculation of Mr. McKoy's criminal history points." *McKoy*, 452 F.3d at 239.

9

Applying this reasoning, we find that it was appropriate for Phillips's sentencing court to include points for the June 28, 1994, December 18, 1994, and August 9, 1995 offenses in the criminal history calculation. There is no indication that prosecution of any these crimes was deferred. Rather, the counts in the petitions for the June 28 and December 18, 1994 offenses were found true, and, accordingly, Phillips was sentenced to be a ward of the court and participate in the Kentfields program. Pursuant to the August 9, 1995 charge, Phillips entered a guilty plea, was given probation, and was placed at the W.J. Maxey Boys Training School. Even though these sentences encompass probation and enrollment in training schools, in the absence of deferred prosecution, we find that these sentences are not diversionary dispositions within the meaning of § 4A1.2(f).

## II.

Additionally, we find that the district court did not abuse its discretion by denying Phillips's request for an evidentiary hearing, as the trial record is sufficient to conclude that counsel was not ineffective in failing to challenge the computation of defendant's criminal history. The district court reasonably concluded, based upon the compilation of court forms indicating that defendant's right to counsel had not been violated, that no evidentiary hearing was necessary to explore the issue.[5] No factual issue requiring an evidentiary hearing remains in dispute. We must abide by the restrictive conditions for granting an evidentiary hearing that are outlined in § 2254(e)(2) and respect "Congress' intent to avoid unneeded evidentiary hearings in federal habeas corpus." *Williams v. Taylor*, 529 U.S. 420, 436 (2000).

**CONCLUSION**

---

[5]The dissent appears troubled by the inclusion of these state court documents in the district court record. However, neither of the parties challenge their inclusion, and, as noted above, both parties rely upon them and accept their validity as to content that supports their respective cases.

10

For the foregoing reasons, we **AFFIRM** the district court's dismissal of petitioner's § 2255 motion to vacate, set aside or correct his sentence.

**CLAY, Circuit Judge, dissenting.** The majority finds that Petitioner's trial counsel did not err in failing to object to the use of juvenile offenses in the calculation of Petitioner's criminal history. There is simply no factual or legal basis for affirming the district court decision. Accordingly, I would vacate the district court's decision, and remand this case to the district court for an evidentiary hearing to determine whether Petitioner's waiver of counsel was knowing and voluntary, and whether the juvenile adjudications were diversionary dispositions under U.S.S.G. § 4A1.2(f).

## BACKGROUND

Since the majority opinion provides little by way of factual background, a more complete recitation of the facts is appropriate here. Petitioner robbed a bank in Grand Rapids, Michigan on April 8, 1999, and banks in Columbus, Georgia on March 6, 2000, and July 28, 2000. During the district court proceedings, Petitioner was represented by an assistant federal public defender ("counsel" or "trial counsel"). He pled guilty to armed bank robbery charges, in violation of 18 U.S.C. § 2113(d), and to using a firearm in the commission of a felony, in violation of 18 U.S.C. § 924(c), on March 19, 2001.

In the presentence investigation report, the April 8, 1999 bank robbery was assigned offense level thirty-one, the March 6, 2000 bank robbery was assigned offense level twenty-eight, and the July 28, 2000 bank robbery was assigned offense level twenty-three. Combining the offense levels for the three bank robberies resulted in an offense level of thirty-four. Since Petitioner received a two level reduction for accepting responsibility, and a one level reduction for entering a guilty plea, the final offense level was level thirty-one. The presentence report also assigned Petitioner ten criminal history points, including four points for three juvenile offenses.

## A.     The First Juvenile Offense

On June 28, 1994, when Petitioner was fourteen years old, he was charged with breaking and entering a restaurant in Grand Rapids, Michigan. (J.A. 184)  On October 18, 1994, Petitioner was "[m]ade ward of court, placed on probation and at the Kentfields program," by the 17th Circuit Court, Juvenile Division in Grand Rapids, Michigan ("juvenile court" or "state court"). *Id.*  The presentence report indicates that "[a]ccording to juvenile court records, [Petitioner] waived representation by an attorney" in connection with the breaking and entering offense. *Id.*  The record also contains an "order of disposition" from the juvenile court which summarily states that Petitioner "waived an attorney." (J.A. 151) (capitalization omitted).  Petitioner was assigned one criminal history point in connection with this offense.

## B.     The Second Juvenile Offense

On December 18, 1994, when Petitioner was fourteen years old, he was "observed . . . leaning over a 1991 Plymouth Acclaim." (J.A. 184)  "[T]he window of the vehicle had been smashed and a screwdriver was lying on the ground between the defendant and the vehicle. [Petitioner] identified himself as Derrick Smith and was arrested.  He later admitted his true name . . . and advised he had lied because he was on juvenile probation." (J.A. 185)  Petitioner was charged with "Malicious Destruction of Property Under $100; [ ] False Information to a Peace Officer; [ ] [and] Curfew Violation." (J.A. 184)  On March 30, 1995, the juvenile court, sentenced Petitioner to "continued ward of court" status. *Id.*  With respect to this offense, the presentence report indicates that "[a]ccording to juvenile court records, [Petitioner] waived representation by an attorney." *Id.*  This statement is the only information in the record concerning Petitioner's alleged waiver of counsel in connection with this offense.  Petitioner "was discharged from probation on

13

May 25, 1995, after successfully completing the Kentfields program." *Id.* Petitioner was assigned one criminal history point for this offense.

## C.    Third Juvenile Offense

On August 9, 1995, when he was fifteen years old, Petitioner was charged with armed robbery. Unlike the other two uncounseled juvenile offenses, Petitioner "was represented by [an] attorney," and "entered a plea of guilty . . . pursuant to a plea agreement" for this offense. (J.A. 185; *see also* J.A. 152) On March 5, 1996, the juvenile court, sentenced Petitioner to probation and "placed at the W.J. Maxey Boys Training School. Based on his progress, [Petitioner] was referred to a halfway house in Lansing, Michigan," (J.A. 185-86), and to "the Wedgwood Advanced Community Living Program," *id.* at 186. He "was discharged from court wardship on September 3, 1999, at the age of 19." *Id.* This offense was assigned two criminal history points. Since he was represented by counsel, Petitioner does not challenge the criminal history points assigned to this offense. Petitioner challenges only the criminal history points assigned to the first and second juvenile offenses.

## D.    Sentencing and Post-Conviction Proceedings

Petitioner's offense level and criminal history points resulted in a sentencing range of 168 to 210 months. He was also subject to a mandatory consecutive sentence of 120 months for the firearm charge. The presentence report applied a six-level offense enhancement to the April 8, 1999 bank robbery for "otherwise use" of a firearm in the commission of a felony, under U.S.S.G. § 2B3.1(b)(2)(B). (J.A. 21) Trial counsel's objection to the enhancement was overruled by the district court. (J.A. 23) Counsel did not raise any other objections. Based on the presentence report's calculation of the offense levels and criminal history points, the district court sentenced Petitioner

14

to an imprisonment term of 192 months for each of the bank robberies, to be served concurrently, and 120 months for the felony-firearm offense, to be served consecutively. On June 22, 2001, Petitioner appealed the district court's sentence enhancement, and this Court affirmed the sentence on August 5, 2002. *See United States v. Phillips*, 42 F. App'x 743 (6th Cir. 2002) (unpublished case).

On July 11, 2003, Petitioner filed a *pro se* motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255 ("§ 2255 motion"), on the grounds that 1) his sentence was improperly enhanced; 2) uncounseled juvenile offenses should not have been assigned criminal history points; and 3) his trial counsel was ineffective in failing to raise both of these claims. On August 11, 2003, the district court dismissed the first claim "as frivolous," but ordered that the government respond to the other claims in the motion. *Id.* The government's response indicated that

> it is in the best interest of all concerned to obtain an affidavit from petitioner['s] [ ] sentencing attorney to determine what advice was given or relied upon with regard to the criminal history sentencing issue. If . . . [the] attorney correctly determined that the . . . convictions were properly "counted" under the sentencing guidelines, then his ineffective assistance claim must fail.

(J.A. 131-32). Trial counsel did not submit an affidavit or otherwise respond to the § 2255 motion.

On November 19, 2003, the district court noted that "a one point change would drop Petitioner to a lower criminal history category" and reduce his sentence, (J.A. 146), but denied the § 2255 motion finding that Petitioner "either knowingly waived counsel or was appointed counsel in his state juvenile cases," *id.* at 147. Since the district court record did not contain trial counsel's affidavit and pertinent state court records, Petitioner filed a motion for reconsideration arguing that

15

the court ruled "without a complete record of the state court proceedings." (J.A. 155) The motion

for reconsideration was denied on December 31, 2003.

## DISCUSSION

### A.     Uncounseled Juvenile Offenses

Petitioner was fourteen years old at the time of the first offense, and fifteen years old at the

time of the second offense. The presentence report indicates that Petitioner "waived representation

by an attorney" with respect to both of these offenses, but there is simply no evidence of a valid

waiver of the right to counsel. (J.A. 184)

The record contains a single state court document which summarily states that Petitioner

"waived an attorney" in connection with the first juvenile offense. (J.A. 151) Records concerning

the second juvenile offense are entirely absent from the record.[1] The majority ignores the sheer

dearth of records and appears to defer to the cursory state court document. This deference is

completely unfounded. The document cannot be given great weight because it does not contain any

meaningful elaboration and fails to set forth the circumstances surrounding the waiver of the right

to counsel.

Rather than deferring to a cursory and inconclusive state court document, this Court is

charged with "ensur[ing] that a defendant's waiver is made with eyes wide open" and "must

thoroughly investigate the circumstances under which the waiver is made." *Fowler*, 253 F.3d 244,

249 (6th Cir. 2001) (citation omitted). This Court "must indulge every reasonable presumption

against waiver of an individual's fundamental constitutional rights," *id.* at 249 (citation omitted), and

_____

[1] Since the only state court document in the record was prepared exclusively in connection
with the first juvenile offense, the document cannot serve as a basis for inferring that Petitioner
waived counsel for the second juvenile offense.

16

"looks at all of the circumstances surrounding waiver of counsel to ensure that such waiver was knowing and intelligent," *James v. Brigano*, 470 F.3d 636, 643 (6th Cir. 2006). In this case, there is no record of a colloquy between the trial judge and Petitioner concerning the implications of waiving the right to counsel. There is simply no information on the record to determine whether the waiver of the right to counsel was made orally or in writing; whether Petitioner's parents were notified of Petitioner's right to counsel; whether Petitioner or his parents waived the right to counsel; or whether Petitioner's parents consented to the waiver.[2] Since we have no colloquy or meaningful records to review, this Court simply cannot test whether Petitioner's constitutional rights have been violated.

Despite the complete absence of evidence and information, the majority affirms the district court's conclusion that Petitioner "either *knowingly waived counsel* or was appointed counsel in his state juvenile cases." (J.A. 147) (emphasis added). An affirmance of the district court decision is simply unfounded because the record is inconclusive and does not indicate whether Petitioner waived counsel under the appropriate procedural mechanisms. More specifically, the district court failed to properly inquire whether Petitioner's knowingly, intelligently, and voluntarily waived the right to counsel. *See, e.g.*, *King v. Bobby*, 433 F.3d 483, 490 (6th Cir. 2006); *Fowler v. Collins*, 253

---

[2] Although Petitioner's mother appears to have been present in one of the state court proceedings, there is no information concerning the role Petitioner's mother played in the proceeding. *See* J.A. 151. In *Application of Gault*, the Supreme Court expressly held that:

> [t]he Due Process Clause of the Fourteenth Amendment requires that
> . . . *the child and his parents must be notified of the child's right to be*
> *represented by counsel retained by them, or if they are unable to*
> *afford counsel, that counsel will be appointed to represent the child.*

387 U.S. 1, 41 (1967) (emphasis added). The mere presence of Petitioner's mother cannot be given great weight because the record simply does not show that Petitioner's mother was apprised of any constitutional rights.

F.3d 244, 249 (6th Cir. 2001) (holding that for a defendant's waiver to be valid, the "waiver of his right to counsel must be made on the record knowingly, intelligently, and voluntarily"); *United States v. Logan*, 250 F.3d 350, 377 (6th Cir. 2001) (holding that a conviction does not constitute an uncounseled conviction if "[t]he record reflects that [petitioner] knowingly and intelligently waived his right to counsel in connection with the . . . conviction").

In this case, "it is unclear from the record whether [petitioner] was afforded [the] right to counsel during the [juvenile] delinquency proceedings." *United States v. Robertson*, 40 F. App'x 933, 940 (6th Cir. 2002) (unpublished case). Given the scant record, rather than affirming the district court's unfounded conclusion, I would "vacate the sentence and remand th[e] case with instructions to the district court to determine whether [petitioner] was afforded this element of due process during the delinquency adjudication." *Id.* Since there is no record of the alleged waiver of the right to counsel, I would find that a determination on the validity of Petitioner's waiver is simply not possible on this record and that the district court erred in concluding that Petitioner knowingly waived counsel in the juvenile cases.

**B.     Diversionary Dispositions**

In this case, the record indicates that Petitioner's juvenile offenses resulted in Petitioner being "placed on probation and at the Kentfields program." (J.A. 184) Petitioner argues that since he was not confined to a juvenile facility, the adjudications should be construed as "diversionary dispositions" under U.S.S.G. § 4A1.2(f). The express language of U.S.S.G. § 4A1.2(f) indicates that if these adjudications are so construed, they may not be counted when determining Petitioner's criminal history category. *See, e.g.*, *United States v. DiPina*, 178 F.3d 68, 78 (1st Cir. 1999) ("[I]f

[petitioner's] prior juvenile dispositions were 'diversionary dispositions' . . ., then they could not be counted toward his criminal history.").

There is simply no information in the record about the nature of Petitioner's juvenile adjudications. Although the presentence report indicates that Petitioner was placed in the "Kentfields program," (J.A. 184), the record does not contain any information about this program. The record does not explain what the program entailed or the purpose of Petitioner's placement in the program. Notably, the district court failed to inquiry into the nature of Petitioner's juvenile adjudications and did not make a determination as to whether the adjudications constitute "diversionary dispositions." U.S.S.G. § 4A1.2(f). Nevertheless, the majority finds that the juvenile adjudications were not diversionary dispositions. Since "[t]he record reveals nothing about whether or not [offenses] were diversionary," the district court should "resolve this question on remand." *DiPina*, 178 F.3d at 78. Accordingly, I would find that the district court erred in failing to do make a determination with respect to whether Petitioner's juvenile adjudications constitute diversionary dispositions under U.S.S.G. § 4A1.2(f).

## C. Petitioner Presents a Potentially Meritorious Claim for Ineffective Assistance of Counsel

Petitioner argues that trial counsel failed to object to 1) assigning criminal history points to the two uncounseled juvenile offenses, and 2) counting the juvenile offenses on the grounds that they resulted in "diversionary dispositions" under U.S.S.G. § 4A1.2(f). As discussed above, there is no record of Petitioner's waiver of the right to counsel in the juvenile proceedings, and no information concerning the nature of Petitioner's juvenile adjudications. If counsel had raised the appropriate objections, the district court could have inquired about whether Petitioner's waiver of counsel was

19

knowing and voluntary, and whether the juvenile adjudications were "diversionary dispositions" under U.S.S.G. § 4A1.2(f).

There is also a strong probability that Petitioner would have been assigned a lower criminal history category if counsel had raised the appropriate objections. Petitioner was assigned ten criminal history points and placed in criminal history category five which starts at ten criminal history points. As the district court recognized, even "a one point change would drop Petitioner to a lower criminal history category." (J.A. 146). Under criminal history category five, Petitioner's sentencing range was 168 to 210 months. He was actually sentenced to 192 months. In the lower criminal history category, Petitioner's sentencing range would have been 151 to 188 months. Even if Petitioner could have received the maximum sentence of 188 months, his sentence would have been significantly lower than his actual sentence of 192 months.

The Supreme Court has found that any increase in a sentence constitutes prejudice within the meaning of *Strickland*. *See Glover v. United States*, 531 U.S. 198, 203 (2001) (holding that "[a]uthority does not suggest that a minimal amount of additional time in prison cannot constitute prejudice. Quite to the contrary, our jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance."); *see also United States v. Allen*, 53 F.App'x 367, 376 (6th Cir. 2002) (finding that "[t]he Supreme Court has held that prejudice is present where counsel's error results in an increase in defendant's sentence."); *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004) (holding that "any amount of actual jail time has Sixth Amendment significance, which constitutes prejudice for purposes of the *Strickland* test") (internal quotation marks and citations omitted); *United States v. Franks,* 230 F.3d 811, 815 (5th Cir. 2000) (finding prejudice where

20

defendant was sentenced under sentencing guidelines range of 70 to 87 months instead of a 57 to 71 month range).

In this case, I would find that Petitioner has presented a potentially meritorious claim for ineffective assistance of counsel because an objection supported by the appropriate legal authority likely would have resulted in a substantially lower sentence. *See, e.g.*, *United States v. Romano*, 314 F.3d 1279, 1282 (11th Cir. 2002) ("We have no difficulty in concluding that the use of the higher sentence range affected appellant's substantial rights."); *see also United States v. Horey*, 333 F.3d 1185, 1188 (10th Cir. 2003) ("As there is an increase in the actual amount of jail time that may be served . . . [petitioner] has established prejudice.").

**D.      The District Court Abused its Discretion in Refusing to Hold a Hearing**

In the instant case, since there is no information on the record concerning Petitioner's waiver of the right to counsel and the nature of the juvenile adjudications, I strongly believe that the parties should be provided with an opportunity to develop the record and inquire into whether Petitioner's waiver of counsel was knowing and voluntary, and whether the juvenile adjudications constituted "diversionary dispositions" under U.S.S.G. § 4A1.2(f).

Under 28 U.S.C.A. § 2255, when a petitioner files a motion to vacate, set aside or correct a sentence:

> [u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255. "The statute does not require a full blown evidentiary hearing in every instance . . . . Rather, the hearing conducted by the court, if any, must be tailored to the specific needs of the

21

case, with due regard for the origin and complexity of the issues of fact and the thoroughness of the record on which (or perhaps, against which) the section 2255 motion is made." *Smith v. United States*, 348 F.3d 545, 550-51 (6th Cir. 2003) (internal quotation marks and citation omitted) (alterations in the original); *see also Fontaine v. United States*, 411 U.S. 213, 215 (1973).

The majority woefully mischaracterizes the record and concludes that the record in this case is adequate and sufficient. The presentence report and a single, inconclusive state court record are the only documents in the record that contain references to Petitioner's alleged waiver of counsel. Notably, the record below does not contain any state court records for the second juvenile offense. Even if the probation officer procured state court records which confirmed that Petitioner waived his right to counsel and based the presentence report on such records, those state court records were not a part of the district court record. Further, there is no indication that the district court, the government, or Petitioner's counsel reviewed these records.

Although this Court is charged with examining the facts and circumstances underlying the waiver of the right to counsel, in this case there was no examination or inquiry to determine whether the state court records, if any, actually reflected circumstances supportive of a valid waiver of a juvenile's right to counsel. The presentence report and state court document are cursory and inconclusive because they do not contain any information concerning the circumstances surrounding Petitioner's alleged waiver. It is simply not appropriate for the majority to defer to this cursory information, particularly because the right to counsel is a constitutional right of vital importance. As the Supreme Court has recognized, "in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair

22

trial." *Wade*, 388 U.S. at 226. In the context of juvenile proceedings, the importance of the right to counsel is amplified because

> [a] juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it. The child []requires the guiding hand of counsel at every step in the proceedings against him.

*Application of Gault*, 387 U.S. at 36.

I strongly believe that the "resolution of [petitioner's] claim requires further factual development." *King v. United States*, 199 F. App'x 524, 527 (6th Cir. 2006) (unpublished case). Petitioner "should have been given the opportunity at an evidentiary hearing to develop a record on these factual issues in the lower court." *Smith v. United States*, 348 F.3d 545, 554 (6th Cir. 2003). "A district court's failure to grant an evidentiary hearing when the files and records of the case are inconclusive on the issue of whether movant is entitled to relief constitutes an abuse of discretion." *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005). "[A]n evidentiary hearing is warranted . . . [because petitioner] presented a potentially meritorious claim for ineffective assistance of counsel, and [ ] deserves the right to develop a record to" support his claim. *Griffin v. United States*, 330 F.3d 733, 739 (6th Cir. 2003). Given the complete absence of meaningful evidence in the record, I would find that the district court abused its discretion in refusing to hold an evidentiary hearing.

For the foregoing reasons, I would vacate the district court's order denying Petitioner's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255, and remand the case to the district court for an evidentiary hearing to determine whether Petitioner's waiver of counsel was

knowing and voluntary, and whether the juvenile adjudications were diversionary dispositions under

U.S.S.G. § 4A1.2(f).