CLAY, Circuit Judge,
dissenting.
The majority finds that Petitioner’s trial counsel did not err in failing to object to the use of juvenile offenses in the calculation of Petitioner’s criminal history. There is simply no factual or legal basis for affirming the district court decision. Accordingly, I would vacate the district court’s decision, and remand this case to the district court for an evidentiary hearing to determine whether Petitioner’s waiver of counsel was knowing and voluntary, and whether the juvenile adjudications were diversionary dispositions under U.S.S.G. § 4A1.2(f).
BACKGROUND
Since the majority opinion provides little by way of factual background, a more complete recitation of the facts is appropriate here. Petitioner robbed a bank in Grand Rapids, Michigan on April 8, 1999, and banks in Columbus, Georgia on March 6, 2000, and July 28, 2000. During the dis-
trict court proceedings, Petitioner was represented by an assistant federal public defender (“counsel” or “trial counsel”). He pled guilty to armed bank robbery charges, in violation of 18 U.S.C. § 2113(d), and to using a firearm in the commission of a felony, in violation of 18 U.S.C. § 924(c), on March 19, 2001.
In the presentence investigation report, the April 8, 1999 bank robbery was assigned offense level thirty-one, the March 6, 2000 bank robbery was assigned offense level twenty-eight, and the July 28, 2000 bank robbery was assigned offense level twenty-three. Combining the offense levels for the three bank robberies resulted in an offense level of thirty-four. Since Petitioner received a two level reduction for accepting responsibility, and a one level reduction for entering a guilty plea, the final offense level was level thirty-one. The presentence report also assigned Petitioner ten criminal history points, including four points for three juvenile offenses.
A. The First Juvenile Offense
On June 28, 1994, when Petitioner was fourteen years old, he was charged with breaking and entering a restaurant in Grand Rapids, Michigan. (J.A. 184) On October 18, 1994, Petitioner was “[m]ade ward of court, placed on probation and at the Kentfields program,” by the 17th Circuit Court, Juvenile Division in Grand Rapids, Michigan (“juvenile court” or “state court”). Id. The presentence report indicates that “[ajccording to juvenile court records, [Petitioner] waived representation by an attorney” in connection with the breaking and entering offense. Id. The record also contains an “order of disposition” from the juvenile court which sum *97 marily states that Petitioner “waived an attorney.” (J.A. 151) (capitalization omitted). Petitioner was assigned one criminal history point in connection with this offense.
B. The Second Juvenile Offense
On December 18, 1994, when Petitioner was fourteen years old, he was “observed ... leaning over a 1991 Plymouth Acclaim.” (J.A. 184) “[T]he window of the vehicle had been smashed and a screwdriver was lying on the ground between the defendant and the vehicle. [Petitioner] identified himself as Derrick Smith and was arrested. He later admitted his true name ... and advised he had lied because he was on juvenile probation.” (J.A. 185) Petitioner was charged with “Malicious Destruction of Property Under $100; [] False Information to a Peace Officer; [ ][and] Curfew Violation.” (J.A. 184) On March 30, 1995, the juvenile court, sentenced Petitioner to “continued ward of court” status. Id. With respect to this offense, the presentence report indicates that “[a]ccording to juvenile court records, [Petitioner] waived representation by an attorney.” Id. This statement is the only information in the record concerning Petitioner’s alleged waiver of counsel in connection with this offense. Petitioner “was discharged from probation on May 25, 1995, after successfully completing the Kentfields program.” Id. Petitioner was assigned one criminal history point for this offense.
C. Third Juvenile Offense
On August 9, 1995, when he was fifteen years old, Petitioner was charged with armed robbery. Unlike the other two uncounseled juvenile offenses, Petitioner “was represented by [an] attorney,” and “entered a plea of guilty ... pursuant to a plea agreement” for this offense. (J.A. 185; see also J.A. 152) On March 5, 1996, the juvenile court, sentenced Petitioner to probation and “placed at the W.J. Maxey Boys Training School. Based on his progress, [Petitioner] was referred to a halfway house in Lansing, Michigan,” (J.A. 185-86), and to “the Wedgwood Advanced Community Living Program,” id. at 186. He “was discharged from court wardship on September 3,1999, at the age of 19.” Id. This offense was assigned two criminal history points. Since he was represented by counsel, Petitioner does not challenge the criminal history points assigned to this offense. Petitioner challenges only the criminal history points assigned to the first and second juvenile offenses.
D. Sentencing and Post-Conviction Proceedings
Petitioner’s offense level and criminal history points resulted in a sentencing range of 168 to 210 months. He was also subject to a mandatory consecutive sentence of 120 months for the firearm charge. The presentence report applied a six-level offense enhancement to the April 8, 1999 bank robbery for “otherwise use” of a firearm in the commission of a felony, under U.S.S.G. § 2B3.1(b)(2)(B). (J.A. 21) Trial counsel’s objection to the enhancement was overruled by the district court. (J.A. 23) Counsel did not raise any other objections. Based on the presentence report’s calculation of the offense levels and criminal history points, the district court sentenced Petitioner to an imprisonment term of 192 months for each of the bank robberies, to be served concurrently, and 120 months for the felony-firearm offense, to be served consecutively. On June 22, 2001, Petitioner appealed the district court’s sentence enhancement, and this Court affirmed the sentence on August 5, 2002. See United States v. Phillips, 42 Fed.Appx. 743 (6th Cir.2002) (unpublished case).
*98 On July 11, 2003, Petitioner filed a pro se motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255 (“ § 2255 motion”), on the grounds that 1) his sentence was improperly enhanced; 2) uncounseled juvenile offenses should not have been assigned criminal history points; and 3) his trial counsel was ineffective in failing to raise both of these claims. On August 11, 2003, the district court dismissed the first claim “as frivolous,” but ordered that the government respond to the other claims in the motion. Id. The government’s response indicated that
it is in the best interest of all concerned to obtain an affidavit from petitioner[’s][] sentencing attorney to determine what advice was given or relied upon with regard to the criminal history sentencing issue. If ... [the] attorney correctly determined that the ... convictions were properly “counted” under the sentencing guidelines, then his ineffective assistance claim must fail.
(J.A. 131-32). Trial counsel did not submit an affidavit or otherwise respond to the § 2255 motion.
On November 19, 2003, the district court noted that “a one point change would drop Petitioner to a lower criminal history category” and reduce his sentence, (J.A. 146), but denied the § 2255 motion finding that Petitioner “either knowingly waived counsel or was appointed counsel in his state juvenile cases,” id. at 147. Since the district court record did not contain trial counsel’s affidavit and pertinent state court records, Petitioner filed a motion for reconsideration arguing that the court ruled “without a complete record of the state court proceedings.” (J.A. 155) The motion for reconsideration was denied on December 31, 2003.
DISCUSSION
A. Uncounseled Juvenile Offenses
Petitioner was fourteen years old at the time of the first offense, and fifteen years old at the time of the second offense. The presentence report indicates that Petitioner “waived representation by an attorney” with respect to both of these offenses, but there is simply no evidence of a valid waiver of the right to counsel. (J.A. 184)
The record contains a single state court document which summarily states that Petitioner “waived an attorney” in connection with the first juvenile offense. (J.A. 151) Records concerning the second juvenile offense are entirely absent from the record.[1] The majority ignores the sheer dearth of records and appears to defer to the cursory state court document. This deference is completely unfounded. The document cannot be given great weight because it does not contain any meaningful elaboration and fails to set forth the circumstances surrounding the waiver of the right to counsel.
Rather than deferring to a cursory and inconclusive state court document, this Court is charged with “ensuring] that a defendant’s waiver is made with eyes wide open” and “must thoroughly investigate the circumstances under which the waiver is made.” Fowler, 253 F.3d 244, 249 (6th Cir.2001) (citation omitted). This Court “must indulge every reasonable presumption against waiver of an individual’s fundamental constitutional rights,” id. at 249 (citation omitted), and “looks at all of the circumstances surrounding waiver of counsel to ensure that such waiver was knowing and intelligent,” James v. Brigano, 470 F.3d 636, 643 (6th Cir.2006). In this case, *99 there is no record of a colloquy between the trial .judge and Petitioner concerning the implications of waiving the right to counsel. There is simply no information on the record to determine whether the waiver of the right to counsel was made orally or in writing; whether Petitioner’s parents were notified of Petitioner’s right to counsel; whether Petitioner or his parents waived the right to counsel; or whether Petitioner’s parents consented to the waiver.[2] Since we have no colloquy or meaningful records to review, this Court simply cannot test whether Petitioner’s constitutional rights have been violated.
Despite the complete absence of evidence and information, the majority affirms the district court’s conclusion that Petitioner “either knowingly waived counsel or was appointed counsel in his state juvenile cases.” (J.A. 147) (emphasis added). An affirmance of the district court decision is simply unfounded because the record is inconclusive and does not indicate whether Petitioner waived counsel under the appropriate procedural mechanisms. More specifically, the district court failed to properly inquire whether Petitioner’s knowingly, intelligently, and voluntarily waived the right to counsel. See, e.g., King v. Bobby, 433 F.3d 483, 490 (6th Cir.2006); Fowler v. Collins, 253 F.3d 244, 249 (6th Cir.2001) (holding that for a defendant’s waiver to be valid, the “waiver of his right to counsel must be made on the record knowingly, intelligently, and voluntarily”); United States v. Logan, 250 F.3d 350, 377 (6th Cir.2001) (holding that a conviction does not constitute an uncounseled conviction if “[t]he record reflects that [petitioner] knowingly and intelligently waived his right to counsel in connection with the ... conviction”).
In this case, “it is unclear from the record whether [petitioner] was afforded [the] right to counsel during the [juvenile] delinquency proceedings.” United States v. Robertson, 40 Fed.Appx. 933, 940 (6th Cir.2002) (unpublished case). Given the scant record, rather than affirming the district court’s unfounded conclusion, I would “vacate the sentence and remand th[e] case with instructions to the district court to determine whether [petitioner] was afforded this element of due process during the delinquency adjudication.” Id. Since there is no record of the alleged waiver of the right to counsel, I would find that a determination on the validity of Petitioner’s waiver is simply not possible on this record and that the district court erred in concluding that Petitioner knowingly waived counsel in the juvenile cases.
B. Diversionary Dispositions
In this case, the record indicates that Petitioner’s juvenile offenses resulted in Petitioner being “placed on probation and at the Kentfields program.” (J.A. 184) Petitioner argues that since he was not confined to a juvenile facility, the adjudications should be construed as “diversionary dispositions” under U.S.S.G. § 4A1.2(f). The express language of U.S.S.G. *100 § 4A1.2(f) indicates that if these adjudications are so construed, they may not be counted when determining Petitioner’s criminal history category. See, e.g., United States v. DiPina, 178 F.3d 68, 78 (1st Cir.1999) (“[I]f [petitioner’s] prior juvenile dispositions were ‘diversionary dispositions’ ..., then they could not be counted toward his criminal history.”).
There is simply no information in the record about the nature of Petitioner’s juvenile adjudications. Although the presentence report indicates that Petitioner was placed in the “Kentfields program,” (J.A. 184), the record does not contain any information about this program. The record does not explain what the program entailed or the purpose of Petitioner’s placement in the program. Notably, the district court failed to inquiry into the nature of Petitioner’s juvenile adjudications and did not make a determination as to whether the adjudications constitute “diversionary dispositions.” U.S.S.G. § 4A1.2(f). Nevertheless, the majority finds that the juvenile adjudications were not diversionary dispositions. Since “[t]he record reveals nothing about whether or not [offenses] were diversionary,” the district court should “resolve this question on remand.” DiPina, 178 F.3d at 78. Accordingly, I would find that the district court erred in failing to do make a determination with respect to whether Petitioner’s juvenile adjudications constitute diversionary dispositions under U.S.S.G. § 4A1.2(f).
C. Petitioner Presents a Potentially Meritorious Claim for Ineffective Assistance of Counsel
Petitioner argues that trial counsel failed to object to 1) assigning criminal history points to the two uncounseled juvenile offenses, and 2) counting the juvenile offenses on the grounds that they resulted in “diversionary dispositions” under U.S.S.G. § 4A1.2(f). As discussed above, there is no record of Petitioner’s waiver of the right to counsel in the juvenile proceedings, and no information concerning the nature of Petitioner’s juvenile adjudications. If counsel had raised the appropriate objections, the district court could have inquired about whether Petitioner’s waiver of counsel was knowing and voluntary, and whether the juvenile adjudications were “diversionary dispositions” under U.S.S.G. § 4A1.2(f).
There is also a strong probability that Petitioner would have been assigned a lower criminal history category if counsel had raised the appropriate objections. Petitioner was assigned ten criminal history points and placed in criminal history category five which starts at ten criminal history points. As the district court recognized, even “a one point change would drop Petitioner to a lower criminal history category.” (J.A. 146). Under criminal history category five, Petitioner’s sentencing range was 168 to 210 months. He was actually sentenced to 192 months. In the lower criminal history category, Petitioner’s sentencing range would have been 151 to 188 months.. Even if Petitioner could have received the maximum sentence of 188 months, his sentence would have been significantly lower than his actual sentence of 192 months.
The Supreme Court has found that any increase in a sentence constitutes prejudice within the meaning of Strickland. See Glover v. United States, 531 U.S. 198, 203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001) (holding that “[a]uthority does not suggest that a minimal amount of additional time in prison cannot constitute prejudice. Quite to the contrary, our jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance.”); see also United States v. Allen, 53 Fed.Appx. 367, 376 (6th Cir.2002) (finding that *101 “[t]he Supreme Court has held that prejudice is present where counsel’s error results in an increase in defendant’s sentence.”); United States v. Grammas, 376 F.3d 433, 436 (5th Cir.2004) (holding that “any amount of actual jail time has Sixth Amendment significance, which constitutes prejudice for purposes of the Strickland test”) (internal quotation marks and citations omitted); United States v. Franks, 230 F.3d 811, 815 (5th Cir.2000) (finding prejudice where defendant was sentenced under sentencing guidelines range of 70 to 87 months instead of a 57 to 71 month range).
In this case, I would find that Petitioner has presented a potentially meritorious claim for ineffective assistance of counsel because an objection supported by the appropriate legal authority likely would have resulted in a substantially lower sentence. See, e.g., United States v. Romano, 314 F.3d 1279, 1282 (11th Cir.2002) (“We have no difficulty in concluding that the use of the higher sentence range affected appellant’s substantial rights.”); see also United States v. Horey, 333 F.3d 1185, 1188 (10th Cir.2003) (“As there is an increase in the actual amount of jail time that may be served ... [petitioner] has established prejudice.”).
D. The District Court Abused its Discretion in Refusing to Hold a Hearing
In the instant case, since there is no information on the record concerning Petitioner’s waiver of the right to counsel and the nature of the juvenile adjudications, I strongly believe that the parties should be provided with an opportunity to develop the record and inquire into whether Petitioner’s waiver of counsel was knowing and voluntary, and whether the juvenile adjudications constituted “diversionary dispositions” under U.S.S.G. § 4A1.2(f).
Under 28 U.S.C.A. § 2255, when a petitioner files a motion to vacate, set aside or correct a sentence:
[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.
28 U.S.C. § 2255. “The statute does not require a full blown evidentiary hearing in every instance.... Rather, the hearing conducted by the court, if any, must be tailored to the specific needs of the case, with due regard for the origin and complexity of the issues of fact and the thoroughness of the record on which (or perhaps, against which) the section 2255 motion is made.” Smith v. United States, 348 F.3d 545, 550-51 (6th Cir.2003) (internal quotation marks and citation omitted) (alterations in the original); see also Fontaine v. United States, 411 U.S. 213, 215, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973).
The majority woefully mischaracterizes the record and concludes that the record in this case is adequate and sufficient. The presentence report and a single, inconclusive state court record are the only documents in the record that contain references to Petitioner’s alleged waiver of counsel. Notably, the record below does not contain any state court records for the second juvenile offense. Even if the probation officer procured state court records which confirmed that Petitioner waived his right to counsel and based the presentence report on such records, those state court records were not a part of the district court record. Further, there is no indication that the district court, the govern *102 ment, or Petitioner’s counsel reviewed these records.
Although this Court is charged with examining the facts and circumstances underlying the waiver of the right to counsel, in this case there was no examination or inquiry to determine whether the state court records, if any, actually reflected circumstances supportive of a valid waiver of a juvenile’s right to counsel. The presentence report and state court document are cursory and inconclusive because they do not contain any information concerning the circumstances surrounding Petitioner’s alleged waiver. It is simply not appropriate for the majority to defer to this cursory information, particularly because the right to counsel is a constitutional right of vital importance. As the Supreme Court has recognized, “in addition to counsel’s presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel’s absence might derogate from the accused’s right to a fair trial.” United States v. Wade, 388 U.S. 218, 226, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). In the context of juvenile proceedings, the importance of the right to counsel is amplified because
[a] juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it. The child [ jrequires the guiding hand of counsel at every step in the proceedings against him.
Application of Gault, 387 U.S. at 36, 87 S.Ct. 1428.
I strongly believe that the “resolution of [petitioner’s] claim requires further factual development.” King v. United States, 199 Fed.Appx. 524, 527 (6th Cir.2006) (unpublished case). Petitioner “should have been given the opportunity at an evidentiary hearing to develop a record on these factual issues in the lower court.” Smith v. United States, 348 F.3d 545, 554 (6th Cir.2003). “A district court’s failure to grant an evidentiary hearing when the files and records of the case are inconclusive on the issue of whether movant is entitled to relief constitutes an abuse of discretion.” United States v. McCoy, 410 F.3d 124, 131 (3d Cir.2005). “[A]n evidentiary hearing is warranted ... [because petitioner] presented a potentially meritorious claim for ineffective assistance of counsel, and [] deserves the right to develop a record to” support his claim. Griffin v. United States, 330 F.3d 733, 739 (6th Cir.2003). Given the complete absence of meaningful evidence in the record, I would find that the district court abused its discretion in refusing to hold an evidentiary hearing.
For the foregoing reasons, I would vacate the district court’s order denying Petitioner’s motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255, and remand the case to the district court for an evidentiary hearing to determine whether Petitioner’s waiver of counsel was knowing and voluntary, and whether the juvenile adjudications were diversionary dispositions under U.S.S.G. § 4A1.2(f).

. Since the only state court document in the record was prepared exclusively in connection with the first juvenile offense, the document cannot serve as a basis for inferring that Petitioner waived counsel for the second juvenile offense.

. Although Petitioner’s mother appears to have been present in one of the state court proceedings, there is no information concerning the role Petitioner’s mother played in the proceeding. See J.A. 151. In Application of Gault, the Supreme Court expressly held that:
[t]he Due Process Clause of the Fourteenth Amendment requires that ... the child and his parents must be notified of the child’s right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child.
387 U.S. 1, 41, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (emphasis added). The mere presence of Petitioner’s mother cannot be given great weight because the record simply does not show that Petitioner’s mother was apprised of any constitutional rights.